# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

KORNELIA FOSTER,        )
            Plaintiff,    )
                       )
v.                      )
                       )
AMERICAN AIRLINES, INC.,   )
And PROSPECT AIRPORT      )
SERVICES, INC.,             )
            Defendants.   )

Civil Action No. _____

**C O M P L A I N T**
(Jury Trial Demanded)

Plaintiff, Kornelia Foster, by and through undersigned counsel, hereby brings this civil action against Defendants American Airlines, Inc. and Prospect Airport Services, Inc., and alleges and shows as follows:

## NATURE OF THE CASE

1. This is an action seeking damages for violations of the Air Carrier Access Act (ACAA), 49 U.S.C. § 41705, and applicable Department of Transportation regulations under 14 C.F.R. Part 382, as well as for violations of Title III of the Americans with Disabilities Act, and related state law causes of action.

2. The claims arise out of the Defendants' failure to provide required mobility assistance and reasonable accommodation to Plaintiff, a disabled passenger, on October 11, 2023, at Charlotte Douglas International Airport, resulting in her being left unattended, denied boarding, and stripped of her contracted business-class seating.

3. Plaintiff seeks compensatory damages, emotional distress damages, and such other relief as this Honorable Court deems just and proper.

## JURISDICTION AND VENUE

4. This Honorable Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705, and applicable federal regulations.

5. This Honorable Court also has jurisdiction over Plaintiff's claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189, and supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

Case 3:25-cv-00324-GCM    Document 1    Filed 05/12/25    Page 1 of 21

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, at Charlotte Douglas International Airport, located within the Western District of North Carolina.

## PARTIES

7. Plaintiff, Kornelia Foster ("Foster"), is a resident of Louisiana and a qualified individual with disabilities as defined by the Air Carrier Access Act ("ACAA") and the Americans with Disabilities Act ("ADA"). At all times relevant to this Complaint, Plaintiff was a passenger of American Airlines entitled to receive boarding and mobility assistance under applicable federal law.

8. Defendant, American Airlines, Inc. ("American"), is a foreign corporation incorporated in Delaware with its principal place of business in Fort Worth, Texas. American Airlines is registered to do business in North Carolina, conducts substantial business within the State of North Carolina, including providing commercial airline services at Charlotte Douglas International Airport.

9. Defendant, Prospect Airport Services, Inc. ("Prospect"), is a foreign corporation with headquarters at 2130 South Wolf Road, Des Plaines, Illinois. Prospect provides mobility and passenger wheelchair assistance services under contract with American Airlines at Charlotte Douglas International Airport and is subject to the requirements of 14 C.F.R. Part 382 and Title III of the Americans with Disabilities Act.

## STATEMENT OF FACTS

10. On October 11, 2023, Plaintiff Kornelia Foster ("Foster"), was at the E14A check-in area at Charlotte-Douglas International Airport (CLT) for American Airlines ("AA") flight 5610 to Norfolk, Virginia, approximately 1 1/2 hours prior to departure.

11. Despite the plain awareness of an AA staff member of Foster's presence and knowledge of need of handicap assistance Foster was made to see those who were not handicapped board and then her own seat given away to a standby passenger.

12. Foster experienced a sickening degree of degrading and discriminatory treatment by AA staff on account of her handicap status. Foster followed the exact protocols as she had been made to expect and was still made to feel less-than, as a result of her condition by AA.

13. Foster has experienced air travel as a handicapped/wheelchair assistance passenger for greater than 1 1/2 years. Foster has connected through CLT and followed AA protocols on at least ten occasions over the past 1 1/2 years.

14. Foster's gate was Concourse E, Gate 14A. Of special consideration is the layout of the far end of the E Concourse (Exhibit A, Timeline of Events and Concourse layout).

15.   Referencing Exhibit A, the check-in area for ticketed passengers was labeled in the map "E14, A,B" and indicated by the blue dashed circle. The map is not 100% accurate of the space, but the most available means to represent the area.

16.   Along with other passengers bound for ORF, Foster arrived in this check-in area which had the gate-desk that was managing gate E14A.

17.   As soon as Foster saw the AA check-in attendant ("attendant") arrive at the check-in desk Foster made her way to speak to the attendant to ensure the attendant's awareness of Foster's need for handicap assistance. To speak to the attendant Foster had to stand from the wheelchair and walk to the desk. The attendant began the check-in/boarding process.

18.   Foster was immediately concerned, as in every other instance previously, a handicap assistance employee was there at check-in/boarding to board her immediately upon the call for handicap passengers.

19.   To make sure she wasn't forgotten, Foster stood from the wheelchair and pushed it to within ten (10) feet of the check-in desk, in plain view of the attendant, and then sat back down.

20.   While waiting through the check-in boarding period Foster observed standby passengers were then being called. Further, the plane crew was late in arriving to the plane which lengthened the time available for handicap assistance to arrive.

21.   On at least three occasions during the check-in/boarding process, Foster alerted the attendant to her presence to indicate her need of assistance.

22.   On the third occasion the gate attendant responded to Foster, saying, "You can just walk down," in a dismissive tone and in a manner conveying they did not care about Foster's status as a person with disabilities.

23.   "To walk down" to E14A Foster would have to walk up an upward grade within the terminal before making her way further, to a plane bridge which would likely have a decline.

24.   While still in front of the desk, standby passengers began to get called. Foster observed a passenger was called to the gate-desk by name. This passenger, approaching the desk, asked Foster if she was waiting to go. Foster indicated that she was waiting to go. This occurred within earshot and sight of the check-in attendant. The passenger interacted with the attendant and then proceeded towards gate E14A.

25.   Some time, maybe five minutes after this interaction Foster, again, stood and spoke with the attendant. The attendant told Foster that the gate was closed and that there were no seats available. Foster asked how there were no seats available and who got her seat, when she was there and present to check-in for the flight. At no point, throughout this ordeal, did Foster observe the attendant call for additional assistance. The gate attendant dismissed Foster every chance she got. Foster was upset, speaking loudly, and distressed with the situation.

26. At this time, another AA staff member arrived at the check-in area. This other staff member pushed Foster to gate E14A, indicated by the orange rectangle in Exhibit A.

27. There, at E14A, the AA staff members told Foster that the flight was closed. Foster told the staff members at E14A that she had been waiting for someone to wheel her to the gate; these staff members were apologetic to Foster's situation. Foster demanded to speak to a manager, and, at this point, the staff member then wheeled Foster to a customer service desk. Foster was at E14A for less than two minutes. The person who pushed her could have been a handicap assistant, but Foster cannot specifically confirm it was.

28. Plaintiff was continually met with indifference. AA gate agents failed to ensure Plaintiff's boarding, or to notify or provide a Complaint Resolution Official (CRO) as required by 14 C.F.R. § 382.151. Foster was denied handicap assistance and denied her flight.

29. Plaintiff documented the incident and later filed a formal complaint with the U.S. Department of Transportation (DOT) under the Air Carrier Access Act (Exhibit B, DOT Complaint Filing).

30. In a written response dated February 2024, the DOT concluded that American Airlines violated 14 C.F.R. § 382.95(a), citing a serious failure to provide boarding assistance, which directly caused Plaintiff to miss her flight (Exhibit C, DOT Final Summary of Investigation).

31. The DOT noted that American Airlines acknowledged the violation, calling it a breakdown in its mobility assistance process at Charlotte Douglas International Airport (Exhibit D, DOT Correspondence with Carrier).

32. At no point did American Airlines or Prospect Airport Services provide a Complaint Resolution Official, as required under federal regulations. Nor did they take any steps to offer reasonable accommodation or to mitigate the impact of the failure (Exhibits A–D).

33. As a direct and proximate result of Defendants' conduct, Plaintiff suffered emotional distress, humiliation, anxiety, and physical hardship, and was deprived of the travel experience and contractual expectations associated with her business-class ticket.

**CAUSE OF ACTION I**
**Violation of the Air Carrier Access Act**
**(49 U.S.C. § 41705 and 14 C.F.R. Part 382)**
*(Against Defendant American Airlines, Inc.)*

34. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

35. The Air Carrier Access Act (ACAA), 49 U.S.C. § 41705, prohibits air carriers from discriminating against individuals with disabilities. The statute is implemented by regulations promulgated by the U.S. Department of Transportation (DOT) under 14 C.F.R. Part 382. At all relevant times, Defendant American Airlines, Inc. was a "carrier" subject to the ACAA and the requirements of Part 382.

36. Under 14 C.F.R. § 382.95(a), carriers are required to provide prompt and timely assistance to passengers with disabilities in boarding, deplaning, and making connections. On October 11, 2023, Plaintiff was denied wheelchair assistance and reasonable accommodation at Charlotte Douglas International Airport, despite her advance request for assistance and a confirmed reservation. As a direct result, she was denied boarding, her seat was reassigned, and she was left unattended at the gate area for an extended period of time. (Exhibits A–C) Defendant's failure to provide this assistance constituted a violation of 14 C.F.R. § 382.95(a) and directly led to Plaintiff's missed flight, emotional distress, and economic and dignitary harms.

37. The U.S. Department of Transportation, after formal investigation, issued a finding that American Airlines violated § 382.95(a), confirming that the airline failed to comply with its obligations under the ACAA and applicable federal regulations. (Exhibit C) American Airlines has acknowledged its failure in communications with the DOT, but has not provided Plaintiff with any compensation, redress, or meaningful remedy. (Exhibit D)

38. As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered emotional distress, inconvenience, embarrassment, loss of enjoyment of contracted services, and other damages to be determined at trial.

39. Plaintiff is entitled to compensatory damages, attorneys' fees, and all other relief this Honorable Court deems just and proper.

## CAUSE OF ACTION II
### Violation of Title III of the Americans with Disabilities Act
### (42 U.S.C. §§ 12181–12189)
*(Against Defendant Prospect Airport Services, Inc.)*

40. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

41. Title III of the Americans with Disabilities Act (ADA) prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation, including transportation terminals and airport facilities. See 42 U.S.C. § 12182.

42. Defendant Prospect Airport Services, Inc. ("Prospect") is a private entity that operates within Charlotte Douglas International Airport, a public facility, under contract with

commercial airlines—including American Airlines—to provide wheelchair and mobility assistance to air travelers with disabilities.

43. In so doing, Prospect functions as a provider of services at a place of public accommodation and is therefore subject to the requirements of Title III of the ADA. Plaintiff, as a person with a qualifying disability under the ADA, was entitled to timely, respectful, and meaningful mobility assistance while navigating the airport facility.

44. On October 11, 2023, Prospect failed to provide a wheelchair, failed to offer alternative assistance, and instructed Plaintiff to walk the terminal unassisted, placing her at risk of injury and emotional distress and denying her the equal access and dignity guaranteed by the ADA.

45. Prospect staff did not escalate the matter to a Complaint Resolution Official (CRO), failed to ensure coordination with American Airlines, and ultimately abandoned Plaintiff at the gate, contributing directly to her missed flight and loss of her business-class seat. (Exhibits A–C)

46. As a direct and proximate result of Defendant Prospect's failure to provide services in a non-discriminatory and accessible manner, Plaintiff suffered emotional trauma, physical exhaustion, embarrassment, and loss of dignity.

47. Prospect's conduct constitutes an ongoing pattern of discriminatory practices that deny disabled air travelers the full benefit of public accommodations, in violation of 42 U.S.C. § 12182 and 28 C.F.R. Part 36.

48. As a direct and proximate result of Prospect's actions and omissions outlined herein, Plaintiff is entitled to compensatory damages, injunctive relief, attorney's fees, and such other relief as this Honorable Court may deem just and proper.

### CAUSE OF ACTION III
### Negligence – Failure to Provide Reasonable Care and Assistance
*(Against Defendants American Airlines, Inc. and Prospect Airport Services, Inc.)*

49. Plaintiff realleges and incorporates herein by reference all preceding paragraphs as if fully set forth herein.

50. At all relevant times, Defendants American Airlines ("AA") and Prospect Airport Services ("Prospect") owed Plaintiff a duty of reasonable care in the provision of services, including the obligation to ensure safe, dignified, and timely assistance to disabled passengers traveling through Charlotte Douglas International Airport.

51. Plaintiff requested and was confirmed for mobility assistance in connection with her scheduled flight. She reasonably relied on the Defendants to uphold their contractual and regulatory obligations to assist her in accessing the terminal, reaching her departure gate, and boarding her flight.

52. Despite this duty and Plaintiff's reliance, Defendants failed to provide wheelchair support, failed to ensure Plaintiff's timely boarding, and failed to take any meaningful steps to address the breakdown in services.

53. Defendants further failed to notify a Complaint Resolution Official, provide alternate boarding options, or take reasonable steps to prevent foreseeable harm to Plaintiff.

54. As a result of this negligence, Plaintiff was forced to walk long distances while disabled, was left unattended at the gate, missed her scheduled flight, lost her business-class seating, and experienced mental anguish, physical discomfort, emotional distress, and humiliation.

55. Defendants' actions and omissions fell below the standard of care owed to air travelers generally, and disabled passengers in particular, and directly and proximately caused Plaintiff's injuries.

56. Plaintiff is entitled to compensatory damages for physical hardship, emotional pain and suffering, lost travel value, attorney's fees, costs, and other losses to be proven at trial.

## CAUSE OF ACTION IV
### Negligent Infliction of Emotional Distress (NIED)
*(Against Defendants American Airlines, Inc. and Prospect Airport Services, Inc.)*

57. Plaintiff realleges and incorporates herein by reference all preceding paragraphs as if fully set forth herein.

58. At all relevant times, Defendants owed a duty of care to Plaintiff to provide safe, respectful, and reasonable mobility assistance services while she was traveling through Charlotte Douglas International Airport, particularly given her known disability and confirmed request for wheelchair assistance.

59. Defendants knew or reasonably should have known that failure to provide mobility assistance, especially to a disabled passenger traveling alone, would likely cause significant emotional harm, anxiety, and distress.

60. Despite that duty and foreseeability, Defendants failed to assist Plaintiff, ignored her presence at the gate, reassigned her business-class seat without communication, and left her to navigate the terminal unassisted and unsupported, in direct violation of both professional norms and federal regulations.

61. Defendants' negligent actions and omissions were the direct and proximate cause of Plaintiff's severe emotional distress, including humiliation, fear, frustration, and a sense of abandonment and helplessness, which was exacerbated by her physical limitations and vulnerability.

62. Plaintiff's emotional distress was not fleeting or minor but serious, medically significant, and accompanied by physical discomfort and mental suffering.

63. As a direct, proximate, and foreseeable result of Defendants' negligence, Plaintiff is entitled to recover compensatory damages for the emotional harm she suffered, in an amount to be determined at trial, as well as a reasonable attorney's fee and costs.

## CLAIM FOR PUNITIVE DAMAGES
*(Against Both Defendants under N.C. Gen. Stat. § 1D-15)*

64. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

65. The actions and omissions of both American Airlines, Inc. ("AA") and Prospect Airport Services, Inc. ("Prospect") constituted not only negligence but willful and wanton conduct, reflecting a conscious and reckless disregard for the rights and safety of Plaintiff, a disabled passenger entitled to legal protection.

66. Both Defendants:

a. Knew of Plaintiff's need for mobility assistance,

b. Failed to act or ensure coordination of services,

c. Left Plaintiff unattended for an extended period,

d. Reassigned her business-class seat without notification, and

e. Denied her access to reasonable accommodations—all while being aware of their legal obligations under federal law.

67. Such conduct meets the standard for punitive damages under N.C. Gen. Stat. § 1D-15(a) as it reflects willful indifference to federally protected rights, gross neglect, and total disregard for Plaintiff's physical and emotional safety.

68. Plaintiff is therefore entitled to an award of punitive damages in an amount to be determined by a jury, in addition to compensatory damages.

## DEMAND FOR JURY TRIAL

69. Plaintiff through undersigned counsel and pursuant to Federal Rule of Civil Procedure, Rule 38, hereby demands a jury trial for all issues involved in the above-entitled action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Kornelia Foster, respectfully prays that this Honorable Court enter judgment in her favor and against Defendants ,American Airlines, Inc. and Prospect Airport Services, Inc., and grant the following relief:

1. Compensatory damages in an amount to be determined at trial for:

   a. Emotional distress and mental anguish;

   b. Physical discomfort and hardship;

   c. Loss of business-class services;

   d. Travel disruption and inconvenience;  and,

   e. Out-of-Pocket costs, and other economic loss.

2. Punitive damages under N.C. Gen. Stat. § 1D-15, for willful and wanton conduct and reckless disregard of Plaintiff's rights and safety.

3. Injunctive relief, requiring Defendants to implement, improve, and enforce appropriate training, compliance measures, and monitoring for disability-related services under the ACAA and ADA.

4. Attorney's fees and costs pursuant to applicable federal and state law.

5. Pre- and post-judgment interest as allowed by law.

6. Such other and further relief as this Honorable Court may deem just, proper, and equitable that the Plaintiff is entitled.

Respectfully submitted this 12th day of May 2025.

> _/s/ J. Elliott Field_____
> **J. Elliott Field, Esq., PLLC**
> NCSB# 21679
> 216 N. McDowell St., Ste. 100
> Charlotte, NC 28204
> (704) 334-3747
> _efieldjd@gmail.com_

## LIST OF EXHIBITS

- **Exhibit A** – Plaintiff's Timeline of Events (October 11, 2023)
- **Exhibit B** – Complaint Submitted to U.S. Department of Transportation
- **Exhibit C** – Final Determination Letter from DOT (ACAA Violation Finding)
- **Exhibit D** – American Airlines Response Acknowledging Violation

# VERIFICATION

I, Kornelia Foster, declare under penalty of perjury under the laws of the United States of America, that the foregoing Complaint is true and correct to the best of my knowledge. information, and belief.

Executed on this 8th day of April, 2025.

**KORNELIA FOSTER**

Despite the plain awareness of an American Airlines (AA) staff member of Kornelia's (Lia's) presence and knowledge of need of handicap assistance Lia was made to see those who were not handicapped board and then her own seat given away to a standby passenger. Lia experienced a sickening degree of degrading and discriminatory treatment by AA staff on account of her handicap status. Lia followed the exact protocols as she had been made to expect, and was still made to feel less-than as a result of her condition by AA.

Lia has experienced air travel as a handicapped/wheelchair assistance passenger for greater than 1 1/2 years. Lia has connected through CLT and followed AA protocols on at least ten occasions over the past 1 1/2 years.

On October 11, 2023, Lia was at the E14A check-in area for American Airlines flight 5610 to Norfolk approximately 1 1/2 hours prior to departure. Lia's gate was Concourse E, Gate 14A. Of special consideration is the layout of the far end of the E Concourse (Use this link). Referencing the below map, the check-in area for ticketed passengers was at, as labeled in the map "E14, A,B" and indicated by the blue dashed circle. The map is not 100% accurate of the space but the most available means to represent the area. Along with other passengers bound for ORF, Lia arrived in this check-in area which had the gate-desk which was managing gate E14A.



As soon as Lia saw the AA check-in attendant (hereafter the attendant) arrive at the check-in desk Lia made her way to speak to the attendant to ensure the attendant's awareness of Lia's need for handicap assistance. To speak with the attendant Lia had to stand from the wheelchair and walk to the desk. The attendant began the check-in/boarding process. Lia was immediately concerned, as in every other instance previously, a handicap assistance employee was there at check-in/boarding to board her immediately upon the call for handicap passengers. To make sure she wasn't forgotten, Lia stood from the wheelchair and pushed it to within 10 feet of the check-in desk, in plain view of the attendant, and then sat back down. While waiting through the check-in boarding period Lia observed standby passengers were then being called. Further, the



plane crew was late in arriving to the plane which lengthened the time available for handicap assistance to arrive. On at least three occasions during the check-in/boarding process she alerted the attendant to her presence to indicate her need of assistance.

On the third occasion the gate attendant responded to Lia, saying, "You could just walk down," in a dismissive tone and in a manner conveying they did not care about Lia's status as a person with a handicap. "To walk down" to E14A Lia would have to walk up an upward grade within the terminal before making her way, further, to a plane bridge which would, likely, have a decline.

While still in front of the desk standby passengers began to get called. Lia observed a passenger was called to the gate-desk by name. This passenger, approaching the desk, asked Lia if she was waiting to go. Lia indicated she was. This occurred within earshot and sight of the check-in attendant. The passenger interacted with the attendant and then proceeded towards gate E14A.

Some time, maybe five minutes, after this interaction Lia, again, stood and spoke with the attendant. The attendant told Lia the gate was closed and there were no seats available. Lia asked how there were no seats available and who got her seat when she was there and present to check-in for the flight. At no point throughout this ordeal did Lia observe the attendant call for additional assistance. The gate attendant dismissed Lia every chance she got. Lia was upset and speaking loudly and distressed with the situation.

At this time, another AA staff member arrived at the check-in area. This other staff member pushed Lia to gate E14A, indicated by the orange rectangle in Figure A.

There, at E14A, the AA staff members told Lia the flight was closed. Lia told the staff members at E14A she had been waiting for someone to wheel her to the gate; these staff members were apologetic to Lia's situation. Lia demanded to speak to a manager and, at this point, she was then wheeled Lia to a customer service desk. Lia was at E14A for less than two minutes. The person who pushed her could have been a handicap assistant but Lia cannot specifically confirm it was.

  James Elliott Field, JD, PLLC <efieldjd@gmail.com>

**kimberly.cheek@dot.gov** <kimberly.cheek@dot.gov>                    Fri, Mar 8, 2024 at 4:06 PM
To: EFIELDJD@gmail.com
Cc: kimberly.cheek@dot.gov

**U.S. Department of**          **GENERAL COUNSEL**          1200 New Jersey Ave., S.E.
**Transportation**                                              Washington, DC 20590

Office of the Secretary
of Transportation

Dear Mr. Field:

Thank you for writing to us concerning your problem with American Airlines involving disability issues. We were sorry to hear of your dissatisfaction and will investigate your complaint.

We are sending a copy of your letter to the company and asking it to reply to you, with a copy to us. We will review the response and take further action, as appropriate. We will advise you of the disposition of your complaint when our investigation is concluded; however, you should be aware that due to the time necessary for the carrier to conduct its own review of your complaint and get back to you and us, coupled with our need to review your case and the hundreds of others that we receive each year, our response to you will likely take some time.

In addition to ensuring prompt corrective action when a complaint and carrier response indicate that the airline's policies and procedures are not in compliance with the Air Carrier Access Act (ACAA), the Department generally will pursue further enforcement action on the basis of a number of complaints from which it may infer a pattern or practice of discrimination. However, where one or a few complaints describe particularly egregious conduct on the part of a carrier and those complaints are supported by adequate evidence, we will pursue enforcement action as our resources permit. You should be aware that the Department is statutorily limited in the remedies it may pursue for violations of the ACAA. In this regard, the Department may not award monetary damages or pecuniary relief to the injured party. The Department is limited to issuing cease and desist orders proscribing unlawful conduct by carriers in the future and assessing civil penalties payable to the government. The Department may only take such action through a settlement or after a formal hearing before an administrative law judge. To obtain a personal monetary award of damages, a complainant would have to file a private legal action that may be based on private contract rights or on civil rights statutes that provide for a private right of action.

We have also entered your complaint in our computerized industry monitoring system, and the company will be charged with the complaint in our *Air Travel Consumer Report*. This report is made available to the aviation industry, the news media and the general public so that both consumers and air travel companies can compare the overall and disability-related complaint records of individual airlines. We also use this complaint data to track trends or spot areas of concern which we feel may

warrant further action in the future. This system also serves as a basis for rulemaking, legislation and research.

A summary of the Department's ACAA rules and general travel tips for air travelers with disabilities are available at www.transportation.gov/individuals/aviation-consumer-protection/traveling-disability. Other useful consumer information for air travelers, including the above referenced complaint report and our pamphlet "Fly-Rights, a Consumer's Guide to Air Travel", can be found on our website at http://www.transportation.gov/airconsumer

I hope this information is useful. Thank you for taking the time to contact us.

Sincerely,

Alexander A. Taday III
Director of Civil Rights Advocacy
Office of Aviation Consumer Protection

**Case Number: TV2024026039**          **ESID: 539876**

**Consumer Information**

| Inquirer Type | Name | Address | E-mail Address | Office Phone | Home Phone |
|---|---|---|---|---|---|
| | MR ELLIOTT FIELD | 216 N. MCDOWELL ST., STE. 100 CHARLOTTE NC 28204 | EFIELDJD@GMAIL.COM | | (704) 334-3747 |
| AA | MRS KORNELIA FOSTER | 216 N. MCDOWELL ST., STE. 100 CHARLOTTE NC 28204 | EFIELDJD@GMAIL.COM | | (704) 334-3747 |

**Complaints Information**

| Complaint Code | Carrier Name | Flight Date | Flight Itinerary |
|---|---|---|---|
| MP0600 | AMERICAN AIRLINES | 10/11/2023 | CHARLOTTE TO NORFOLK/FLIGHT NO. 5610 |

**Description of Problem/Inquiry**

Foster not allowed to board. AA had notice of handicap and medical necessities. AA took Foster's seat and gave it to standby passenger. Foster was at Gt E14A in timely manner. Foster advised attendent of her presence. There was no handicap check-in assistance employee to help her board. Foster was forced to wait until boarding was complete. Standby passengers were then called. Plane crew was late, extending time for handicap assitance to arrive. No less than three times during the boarding process, Foster advised boarding employees of her presence. Foster was ignored each time. Foster was advised "you can just walk down." Tone was dismissive and noncaring. This was not possibilty for Foster who is in wheelchair. Standby passengers boarded. Foster then inquired with the attendant, who advised flight was full and gate closed. Attendant never called for assistance. Attendant dismissed Foster during whole sequence of events. Foster was denied handicap assistance and denied her flight.

📄 **TV2024026039_1_ES.pdf**
542K



## TV2024026039 / TV2023111656

1 message

**AirConsumer2 (OST)** <AirConsumer2@dot.gov>                    Mon, Nov 18, 2024 at 11:52 AM
To: "EFIELDJD@GMAIL.COM" <EFIELDJD@gmail.com>
Cc: "DWSMHANSON@GMAIL.COM" <DWSMHANSON@gmail.com>

Dear Mr. Field:

This letter is in further reference to your disability complaint regarding American Airlines. We were sorry to hear of the incident and appreciate the opportunity to advise you of the outcome of our investigation. Enclosed you will find an Investigation Summary Sheet that details the results of our investigation, which was based on the Air Carrier Access Act (ACAA), 49 U.S.C. Section 41705, and our implementing rule, 14 CFR Part 382.

In particular, the Investigation Summary Sheet identifies the applicable section of 14 CFR Part 382, provides a brief summary of that section and explains this office's view on whether the carrier has violated the ACAA and 14 CFR Part 382. If your complaint raises more than one disability issue, an additional Investigation Summary Sheet has been attached to address each issue.

If we believe the complaint or incident involves a violation, the Investigation Summary Sheet indicates the action that we plan to take. We will either pursue formal enforcement action or by copy of this letter notify the airline specified in your complaint of our determination and warn it that any similar incidents could lead to formal enforcement action. Generally, we will pursue enforcement action on the basis of a number of complaints from which we may infer a pattern or practice of discrimination. However, where one or a few complaints describe particularly egregious conduct on the part of a carrier and those complaints are supported by adequate evidence, we will pursue enforcement action as our resources permit. If we decide to seek enforcement action against the airline, your complaint will be among those considered in the context of this action, which may lead to the issuance of a cease and desist order and to the assessment of civil penalties. In the event that this enforcement action leads to litigation, it is possible that we may need sworn statements or witnesses for a hearing. We will advise you if, in fact, we need your further help.

For your information, in an enforcement case, the U.S. Department of Transportation is limited to issuing cease and desist orders and assessing civil penalties not to exceed $41, 577 per violation. Such action can only be accomplished through settlements or formal hearings before administrative law judges. We cannot order compensation for aggrieved parties. To obtain a personal monetary award of damages, a complainant would have to file a private legal action that may be based on private contract rights or on civil rights statutes that provide for a private right of action.

If we have insufficient evidence or it appears that the airline specified in your complaint has not violated the ACAA, we will not pursue enforcement action. Notwithstanding our decision not to pursue enforcement action, however, private legal action may be pursued in the courts based on private contract rights or on civil rights statutes that provide for a private right of action and, in such a proceeding, monetary damages may be sought.

Regardless of whether the airline has been determined to have violated the ACAA, we have entered your complaint in our computerized industry monitoring system, and the carrier's ACAA complaint totals in our monthly *Air Travel Consumer Report* reflect your complaint. Our monthly report is made available to the aviation industry, the news media and the general public so that both consumers and air travel companies can compare the overall complaint records of individual airlines, as well as the number of disability complaints filed against particular carriers. This system also serves as a basis for rulemaking, legislation, and research.

Moreover, we also routinely monitor our complaint records to determine the extent to which carriers are

in compliance with the ACAA and to track trends or spot areas of concern which we feel may warrant further action. This ongoing process also enables us to ensure prompt corrective action whenever we determine that an airline's policies or procedures are not in compliance with our ACAA regulations. Your complaint will be among those considered in the context of this overall process.

I hope this further information is useful. Thank you again for taking the time to contact us.

Sincerely,

Alexander Taday III
Director of Civil Rights Advocacy

Office of Aviation Consumer Protection

US Department of Transportation

By: /s/

Kimberly L. Cheek

Senior Aviation Industry Analyst

Enclosure


**TV2024026039-ISS.docx**
19K

**U.S. Department of Transportation**
Office of the Secretary
of Transportation

**GENERAL COUNSEL**

1200 New Jersey Ave., S.E.
Washington, DC 20590

## INVESTIGATION SUMMARY SHEET

| | |
|---|---|
| **Case Number:** | TV2024026039 |
| **Complainant Title:** | MR |
| **Name:** | ELLIOTT FIELD |
| **Address:** | 216 N. MCDOWELL ST., STE. 100 CHARLOTTE, NC 28204 |
| **Passenger(s):** | Mrs. Kornelia Foster |
| **Airline:** | American Airlines |
| **Travel Date(s):** | October 11, 2023 |
| **Flight Number(s):** | 5610 |
| **City Pair:** | Charlotte / Norfolk |
| **Location of Incident:** | Charlotte Boarding Gate |
| **Complaint/Issue:** | Failure to provide boarding assistance. |
| **Applicable Section of 14 CFR Part 382:** | 382.95(a) |
| **Section Summary:** | 382.95(a) |
| | As a carrier, you must promptly provide or ensure the provision of assistance requested by or on behalf of passengers with a disability, or offered by carrier or airport operator personnel and accepted by passengers with a disability, in enplaning and deplaning. This assistance must include, as needed, the services of personnel and the use of ground wheelchairs, accessible motorized carts, boarding wheelchairs, and/or on-board wheelchairs where provided in accordance with this part, and ramps or mechanical lifts. |
| **Rule Violated?** | Yes |
| **Remarks:** | In his complaint to the Department, Mr. Elliott Field on behalf of Kornelia (Lia) Foster states that despite the plain awareness of an American Airlines (American) staff member of Lia's presence and knowledge of need of handicap assistance Lia was made to see those who were not handicapped board and then her own seat given away to a standby passenger. Mr. Field further states that Lia experienced a sickening degree of degrading and discriminatory treatment by AA staff on account of her handicap status. Mr. Field states Lia followed the exact protocols as she had been made to expect and was still made to feel less-than as a result of her condition by American. |
| | Mr. Field contends that on October 11, 2023, Lia was at the E14A check-in area for American flight 5610 to Norfolk approximately 1 1/2 hours prior to departure. Lia's gate was Concourse E, Gate 14A. Mr. Field |

states as soon as Lia saw the American check-in attendant arrive at the check-in desk Lia made her way to speak to the attendant to ensure the attendant's awareness of Lia's need for handicap assistance. Mr. Field states the attendant began the check-in/boarding process and Lia was immediately concerned, as in every other instance previously, a handicap assistance employee was there at check-in/boarding to board her immediately upon the call for handicap passengers. Mr. Filed states make sure Lia wasn't forgotten, Lia stood from the wheelchair and pushed it to within 10 feet of the check-in desk, in plain view of the attendant, and then sat back down. Mr. Field states while Lia was waiting through the check-in boarding period, Lia observed standby passengers were then being called. Mr. Field states that on at least three occasions during the check-in/boarding process Lia alerted the attendant to her presence to indicate her need of assistance. Mr. Field states that on the third occasion the gate attendant responded to Lia, saying, "You could just walk down," in a dismissive tone and in a manner conveying they did not care about Lia's status as a person with a handicap. Mr. Field states that, maybe five minutes, after this interaction Lia, again, stood and spoke with the attendant and the attendant told Lia the gate was closed and there were no seats available. Lia asked how there were no seats available and who got her seat when she was there and present to check-in for the flight. At no point throughout this ordeal did Lia observe the attendant call for additional assistance. The gate attendant dismissed Lia every chance she got. Lia was upset and speaking loudly and distressed with the situation.

In its response, American states it has investigated the issues Mr. Field has brought to its attention and appreciate the opportunity to share with him the results of its investigation. American further states that based on the information Mr. Filed provided, its wheelchair handlers did provide wheelchair assistance for Lia to her connecting gate. However, it was unable to obtain additional information from the gate agent regarding this matter. American states additionally, Lia did not board Flight 5610 as intended and given its findings, it appears a regulatory violation did occur in Charlotte because Lia did not receive boarding assistance via wheelchair as requested.

In this instance, American violated the Air Carrier Access Act (ACAA) and its implementing regulation, 14 CFR Part 382 (Part 382) when it failed to provide Lia with boarding assistance. Moreover, in the carrier's response, American concedes that there was a violation of the ACAA and Part 382 when it failed to do so. We also note that in prior enforcement case precedent, the Department has explained that it considers a violation to be egregious if the failure to make an accommodations as required by this part results in the passenger missing a flight, among other things. If we decide to seek enforcement action against the airline with respect to this issue, this complaint will be among those considered, which may lead to the issuance of a cease and desist order and to the assessment of civil penalties. By copy of this letter, the carrier will be warned in this instance.



## Your Response From American Airlines
1 message

**AmericanAirlinesCustomerRelations@aa.com** <AmericanAirlinesCustomerRelations@aa.com>
To: efieldjd@gmail.com

Wed, Mar 6, 2024 at 2:34 PM

 

March 6, 2024

Dear Mr. Field:

The Department of Transportation Aviation Consumer Protection Division has recently forwarded your correspondence, case number TV2024026039, regarding Kornelia Foster's travel experience while traveling with us from Charlotte to Norfolk on October 11, 2023. In addition, we have also received correspondence from Mrs. Foster's family member, regarding case number TV2023111656. I appreciate the opportunity to reply to your concerns.

On behalf of American Airlines and PSA Airlines, I deeply apologize for not meeting your expectations during Mrs. Foster's experience with us. We pride ourselves on providing personalized and friendly service in all situations. Our customers should always experience polite, professional service from our employees, regardless of the circumstances. I regret that this was not her experience.

I understand the importance of providing prompt assistance to individuals with disabilities. This includes assistance moving from the terminal entrance to the gate, between gates, or from the gate to the terminal exit. Additionally, we will provide assistance when requested in accessing key functional areas of the terminal, such as ticket counters and baggage claim. However, we must rely on each passenger to identify any special service requests to our employees at the time of travel. I appreciate you giving me the opportunity to respond to you about your recent experience.

We have investigated the issues you have brought to our attention and appreciate the opportunity to share with you the results of our investigation. Based on the information you provided, our wheelchair handlers did provide wheelchair assistance for Mrs. Foster to her connecting gate. However, we were unable to obtain additional information from the gate agent regarding this matter. Additionally, Mrs. Foster did not board Flight 5610 as intended. Given our findings, it appears a regulatory violation did occur in Charlotte because Mrs. Foster did not receive boarding assistance via wheelchair as requested.

As a tangible apology, and in hopes of restoring her confidence in us, my colleague in Customer Relations credited Mrs. Foster's AAdvantage® account with 10,000 bonus miles. While I know that our gesture does not negate Mrs. Foster's experience, we want her to know that we value her business. I hope you will extend our sincere apology to Mrs. Foster.

We want our customers to feel appreciated and cared for during their time with us. While we cannot change the circumstances that affected Mrs. Foster's travel with us on this occasion, please know that I have thoroughly documented your comments and concerns. The details are made available to the appropriate management teams for internal review. Feedback of this nature is vital and will be used to improve our service and provide more efficient assistance to our customers in the future.

In the future, please reach out to Customer Relations at American Airlines for any service dissatisfaction. We would appreciate the opportunity to work with you and resolve any customer service or concerns you may have with American Airlines. You may contact Customer Relations by clicking here.

Should you or Mrs. Foster ever need assistance following a trip you have taken with us, call our Past Travel Disability Assistance Line at 1-800-892-3624. We are here to help.

Mr. Field, we appreciate your business. Thank you for bringing this matter to our attention. We hope to welcome you and Mrs. Foster aboard a future American Airlines flight soon.

Sincerely,

Robert Vaseg

Customer Relations

American Airlines

AA Ref#1-33641962558

The information in this email is confidential and is intended solely for the addressee(s); access to anyone else is unauthorized. If this message has been sent to you in error, do not review, disseminate, distribute or copy it. If you are not the intended recipient, please delete this email from your email system.

If your comments are related to American Airlines service to, from, or in the United Kingdom and we have reached an impasse in terms of resolving your complaint, please know that we are obligated by the Civil Aviation Authority (CAA) to inform you that you may contact a CAA-approved Alternative Dispute Resolution (ADR) provider competent to deal with airline service complaints. American Airlines, however, does not participate with an ADR in resolving disputes.

RESPCONID: 1-FGH7FV0:

RESPID:1-FGH7FUY:

TID:1-FGDK0FY:

PROCESS:Response:

CONTACTID:1-FGEFFGZ: